Good morning, Your Honor. May it please the Court, I'm Kevin Viena, California Deputy Attorney General, here this morning on behalf of Appellant in this matter, Respondent Warden in the habeas corpus matter in the District Court below. This Court should reverse the determination of the District Court because it erred in the selection of the standard of review to be applied to Bell's and DeMola's claim of the improper, well, several claims, but the claim of improper dismissal. of juror number seven. The District Court's error was understandable and perhaps unavoidable. It followed the decision of this Court in Williams v. Cavazos, which said that, which had ruled that where the State Court had not expressly discussed the federal standard in applying to the removal of a juror, in that case a juror who seemed to be engaged in notification, where all of the discussion in the Court of Appeals decision, the relevant State Court decision, involved Penal Code Section 1080. I thought I read that your opposing counsel basically concedes this issue with regard to standard of review in light of the Supreme Court decision in Johnson v. Williams. The question, I guess, would help me is if you could focus on what do we do? Do we decide the issue on our own or do we send it back to the District Court and have them take a look at it? I'd like to say decide it on your own, but I don't think that's quite right. And the reason for that is because the amended report and recommendation, I'd like to say decide on your own because the original report and recommendation found that there was no basis for granting relief on any of the claims. So do you think that we could simply say, look, the magistrate judge got it right on the first R&R, so we're going to vacate, reverse, and direct the District Court to follow the original report and recommendation? I think that's just, but I'm concerned about a technicality, and the technicality is the only report and recommendation that went to the District Court judge. That is, the only report and recommendation that was adopted by the District Court judge was the one that addressed really only the removal of the juror issue. And consequently, I think it's, although I don't think there's much to be said for either Ms. Bell or Mr. Bell or Ms. DeMola in objecting to what would be the original report and recommendation, I think because that wasn't the report and recommendation that went to the judge, they didn't have an opportunity to make objections there. So much as I would like to say that this case is easily resolved by Johnson, and I think it is, I think the remaining issue is easily resolved by Johnson, I don't think it, I can't say in good conscience that I think that's the appropriate resolution here. So should we simply vacate and remand for further proceedings, end of story? Well, I think also with a clear indication that on this issue, the state court did indeed incorporate the federal standard into the denial of Bell's and DeMola's claims, and that the court should apply deferential review as it had in the original report and recommendation. The state court didn't specifically reference federal law, though, right? It did not specifically. So why shouldn't we find that it failed to adjudicate the petitioner's claims on the merits and that the district court properly applied a de novo standard of review? Well, I think Johnson answers that question. Johnson v. Williams answers that question. First of all, throughout Johnson v. Williams, one of the things that's clear, I think, is that the Supreme Court said that the panel that decided Williams v. Cavazzo had not presumed that state courts know and apply the law. And specifically, the Supreme Court made clear in Johnson that there is a strong presumption that the state courts have considered federal law when it's raised properly, that they have considered federal law. And it's treated as a summary denial, just as Ricker had done, as if there were no discussion of anything. But in this case, it is also, I think, there are also strong indications that the state court did consider federal law to the extent consistent with the way it was argued by Bell and DeMola in the Court of Appeal. First of all, Johnson v. Williams has this, I think, statement that resolves the issue, and that is, it is hard to imagine that a panel of Court of Appeal justices in California would not see the constitutional dimension, that is, the Sixth Amendment, to a penal code section 1089 issue of removal of a juror. That's at Johnson, pages 1098 to 1099. Hard to imagine that they don't see it. And clearly, that's what they saw. Cleveland is the relevant case discussed in Johnson, and Cleveland is the relevant case law in California on removal of a juror in 1089. And so that covered it. But what we had here was only a fleeting reference to Johnson, I mean, to Cleveland. That is in Bell's opening brief at Excerpts of Record, page 774, in a footnote. But they had made only a fleeting reference to it. So, in accordance with Johnson, there are three circumstances that were discussed by the Supreme Court where a state court wouldn't be expected to engage in a long and thorough analysis of a federal claim. The first is where that claim is that the state present in corporation. Can't you make an argument that the state and federal claims are inextricably intertwined? I believe that also is in Johnson v. Williams at page 1098, where the Supreme Court noted that they don't have to be perfectly coextensive. But what's clear after Cleveland is that the state courts are aware of, sensitive to, and engaged in the resolution of a federal claim when they deny a claim under California Penal Code Section 1089. And the reason this wasn't argued any greater in the state courts is this was seen as, certainly by the trial judge, and as agreed by the Court of Appeal, as a clear misconduct case. That is, juror number seven repeatedly brought her professional opinion into the jury deliberation room. This would be an easy determination of juror misconduct if the rules were reversed. That is, if someone had done this to achieve a conviction in this case, or was trying to do it to achieve a conviction in this case. This was clear misconduct. But the trial court had referred to Cleveland at Excerpts of Records, page 1571. It said, I need to be careful about not interfering with juror deliberations, about not dismissing a juror because the juror is behaving, well, illogically or inconveniently or not getting along with fellow jurors. This is a case, and the trial judge repeatedly refused to dismiss juror number seven when someone suggested that she was not deliberating. Instead, only when her misconduct became clear and in direct contravention of his earlier warnings to her did he remove her from his conduct. The magistrate judge cited that as the alternative ground for granting habeas relief. Is that another reason why we should send it back and say, no, you have to apply the deferential standard of review to that state court determination? Yes. And it should return to the same thing that happened before. I've talked for nine minutes, probably longer than I needed to. If there are no other questions. Do you want to reserve? I would reserve right now. All right. Thank you. May it please the Court, Mark Trzaski from the Office of the Federal Public Defender for Petitioner Appellee Natalie Damola. And, Counsel, how are you going to divide your time? Yes. I was going to start by briefly discussing our Eighth Amendment claim, which is unique to Damola. Before moving on to the jury claim that both parties have. And when we get there, we divided up our argument. I'm going to discuss the law, the legal standard that applies. I'm going to try to convince you that we're entitled to the NoVo review after Johnson v. Williams. And if 2254-D does apply, that there is clearly established federal law for the party. Are you going to represent us in front of the U.S. Supreme Court? NoVo review? They seem to have a laser focus on the Ninth Circuit on that issue. And I can tell you as habeas counsel, I feel your pain. And I know that our job is to try to convince you to grant relief in a way that stands for the review. And I think I can do that. We're all ears. Mr. Culpepper, I'm going to split the time, go seven and a half minutes, and Mr. Culpepper is then going to discuss the facts of the case and try to show how, regardless of the standard, these facts require relief. First of all, we did not concede that 2254-D applies after Williams. We filed a supplemental letter brief on Johnson v. Williams on July 22nd. And my first heading is under Williams, the state court did not adjudicate demolished federal law deterrent discharge claim on the merits, and therefore we are entitled to the NoVo review. So where would you point us in the record before the state PCR courts as to the strength and depth of that claim being pressed before the state courts? Because what I heard counsel for the state say sort of confirms with my reading of the record that that really wasn't an issue that was pressed. It was essentially all Cleveland, all 1089. Well, no. In fact, both DeMola and Bell, in their appellate opening briefs in state court, cited federal cases and separate law as a stand-alone basis for relief. And unlike the petitioner in Johnson v. Williams, they didn't make their arguments that, in Johnson v. Williams, the Supreme Court noted that the petitioner said, if there's a 1089 violation, accordingly, my Sixth Amendment right has been violated. I mean, you may not have pin sites. No, I do. Let me get my excerpts. Bell's opening brief has been submitted in the excerpts of record. And if you look at pages 773, 774, and 763, you'll see the language. For example, on excerpts of record 774, Bell states, the trial court should have declared a mistrial once it learned from individual jurors there is no reasonable probability the jury could reach a unanimous verdict. Its failure to do so denied Appellant his Sixth Amendment right to a fair and impartial jury, as well as his right to due process in a fair trial, as guaranteed by the Fourteenth Amendment to the United States Constitution and Article I, Section 16 of the California Constitution. Then cites four Supreme Court cases with pinpoint sites, establishing that right. Interestingly, he also cites People v. Cleveland, which the California Court of Appeal opinion never does. And one big difference between this case and Johnson v. Williams is the total absence of Cleveland, in our opinion, and in Johnson it was front and center. And the U.S. Supreme Court said that was the main fact that showed that the state Supreme Court had adjudicated the federal claim. DeMola joined in Bell's opening brief. I think Bell articulated the claim more often and more clearly, but that's okay. DeMola is protected. DeMola's brief is also in the excerpts of record. And if you look at pages 717, 722, 710, and 709, you'll see that she, too, referenced the federal claim. I'll just read one or two of those. At the top of page 516, she says, indeed, the Court's failure to — I'm sorry, that's Bell's petition for re-hearing. I apologize. DeMola's opening brief, if you look at page 717, she says, the Supreme Court has held that if, under all the circumstances, a judge's statement had a coercive effect, the defendant should be given a new trial. And then it cites several U.S. Supreme Court cases. On page — excerpt 709, in a footnote, she says, federal courts do not allow judges to conduct this inquiry. And this is about getting the numerical split. So these federal claims were before the state appellate court. Those federal cases were based on the supervisory power of the court as opposed to a constitutional issue. Am I wrong in my reading of the case law? No, that's correct. So how does that convert to a federal constitutional violation? Sure. Well, probably the best case for that particular proposition is a U.S. Supreme Court case called Lowenfield that came out in 1988, I believe. And it's a 2254 case, so it was applying rules to a state petitioner. And the cite for that case is 484 U.S. 239-41. And Lowenfield says, quote, any criminal defendant being tried by a jury is entitled to the uncoerced verdict of that body. Although Brasfield, which is one of these supervisory cases, was an exercise of the court's supervisory powers, it is nonetheless instructive on the potential dangers of jury polling. And that's what happened here. We also, unlike — But wasn't Brasfield, you said, was a supervisory case? It is. So you've got Lowenfield citing to a Brasfield decision, but how does that convert Lowenfield into a constitutional violation? Because it's applying it to a 2254D habeas petition. So you had to have a federal constitutional violation. It applies the rule. So we infer that they found a federal constitutional violation? No, no. In Lowenfield, it did not find a violation, but it applied that principle and discussed it. And I think that makes it a principle that's clearly established federal law. I mean, that gets back to Judge Callahan's concern. You know, we keep getting slapped down by the Supreme Court when we make those inferential leaps in these cases. And then they tell us, well, but there's no U.S. Supreme Court case directly on point that says that. So how can it be objectively unreasonable under AEDPA for a California court to decide that's not a constitutional violation? I understand. A good case for that is Panetti, the Supreme Court's 2007 case about incompetency to be executed claims. And there they established a very general principle and said, even though it's general and kind of vague, you're entitled to a fair hearing and opportunity. You heard that is clearly established federal law. But it's a death case, and death is different. This is not a death case. But we're talking about the right to an impartial jury, which is a court to the Sixth Amendment. I don't want to take up your time. Yeah, I was just going to say if you wanted to. Yes. Okay. So if the court is not we would ask the court to affirm if the court is not so inclined, a remand to the lower court to allow it to consider all the issues, including an opportunity for us to prove that we can win under 2254D if it applies. Thank you. Good morning, Your Honors. May it please the Court, I am Thaddeus Culpepper. I represent Terry Lee Bell in this matter. I guess I find myself in the role of sort of cleanup on all that's gone forward. One thing I wanted to address even before some of this discussion of the facts, how we got here we believe is also improper. When the R&R was issued by the magistrate judge, the warden did not request a stay through a motion for reconsideration. What the warden wound up doing was issuing this same challenge to the denial of the request for a stay in his opening brief. There's a case, United States v. Lee, 409F App 274, which basically says that that's highly improper. So even how we get here is problematic from that standpoint. Was there an interim order entered by the commissioner or a prior motions panel denying a stay but then referring it to the merits panel for a decision? I am not sure, Your Honor. I understand it. We do that on a fairly regular basis. That's understandable, Your Honor. But here the issue was that there was ample opportunity for the warden to ask for a motion for reconsideration after the order and did not do that. So what's happened in the Superior Court? I assume that nothing has gone forward. Nothing has gone forward. Is there a stay in place? The stay is a de facto stay because of the course of Williams through the Supreme Court. So they basically got what they wanted, even though they hadn't done it properly. But that's beyond the scope of what I'm asking. Let's assume you're right, though. This is a kind of interesting question. So if there is a de facto stay in place, what's to prevent you from going to the Superior Court and saying, look, we demand our right to retrial because habeas relief was granted? Only decorum here in our presence before the court here. We wanted to flesh this out after discussing this issue with my client. The practical issue is let's get to the heart of the matter because it's here. Well, is it concerning that the Superior Court is going to say, well, this is now pending in the U.S. Court of Appeals? I'm not going to do anything until they speak. Possibly. But your Honor is correct in the sense that I would feel that they would be compelled to go forward, given the fact that there was no true stay but a de facto stay. But, I mean, you still have the issue, I guess, that you can raise in the state court if and when you ever get back there. We hope we get back there. But, I mean, you can still raise that issue. That's correct, Your Honor. I believe that's correct. Just a brief review of the facts, which we feel are important. Counsel had discussed the fact of the juror number seven bringing in professional or evaluating evidence in light of her professional background. But what was more important was the fact that her background and her professional status or her opinion would have never been understood by the court there, the trial court, had the trial court not improperly and impermissibly invaded the secrecy of jury deliberations. Now, when you are ‑‑ I was a trial judge. And on a regular basis, you get these notes, and people say so-and-so is doing this or so-and-so is doing that. And what they're talking about is you can't say, okay, how are you ‑‑ I heard the trial judge say repeatedly, don't tell me, you know, I don't want to know what the deliberations are. But when there are allegations of someone going out to the scene of the crime, even though you've told them not to, or going or bringing in outside resources, or, you know, say watching television, reading the newspaper, any of those things, the court clearly has to look into that and isn't ‑‑ why isn't that just what's happening here? Now, people want to blurt everything out, and you have to occasionally say, no, I don't want to hear that. I just want to hear, you know, what are the specific allegations of misconduct? And the trial court here doesn't immediately ‑‑ you get a sense of, you know, when everyone is like making a face at one juror, you know that that's ‑‑ they're the problem. But by the same token, the trial court says, no, I'm not going to remove this person. I understand that removing a holdout is a problem. And then, you know, keeps talking to this person, saying, now, can you do what the court says you have to do? Can you not? And then this juror then goes out and continues to bring things in and bring, I read on this, and I know in my job as a, you know, a psychiatric social worker or whatever the person was, that this person's got some sort of diagnosis or ‑‑ Correct. I understand where Your Honor is headed. The issue here is that there was a note that came back. This is the ER 179. We cannot come to a 12‑person decision at this time. We are a hung jury. After that fact, after that note was sent, then all the information with respect to what juror number seven was doing, with respect to bringing in dictionary definitions, with respect to the state of mind of the defendants, that came after the fact. So what we're really saying is that a mistrial should have been declared at the moment that they were hung or a hung jury. Well, but sometimes people come back in an hour, and you've had a four‑month trial, and they come back in an hour and say we're hung. And then you bring them in and you say, okay, you've only been out one hour. You know, do you think that ‑‑ is there anything you'd like to have read to you? Can you go back and can you talk some more? You know, no trial judge is going to let someone go home right away. Understandable, but the other issue is that the judge asked specifically something that no trial judge should ever ask is, what was the holdup? And she found out that it was 11 to 1. And that to us is the end of all of the discussion, because I believe that the trial judge could have gone and investigated in such a way that there would have been no issue, but the way that the trial judge went about it, finding out information as to what the balance of the ‑‑ or polling individual jurors as to what the number was, 11 to 1. Did the trial judge say tell me how everyone's voting? Tell me what your split is? I do not believe that it was that obvious. The court asked the foreperson for the numerical split. He replied that the split was 11 to 1. So it was that blatant, and from what I gather of the facts, it was where you can see the trial court judge trying to keep this group of jurors together and trying to find out what could be done in dismissing juror number seven and bringing in ‑‑ because what the juror foreperson said was that if we got someone else, we could come to a decision. And that's exactly what this judge did. And I think I'm out of time. Thank you both very much. I think the state has about six minutes left. And I hope not to take all that, Your Honor. Well, can you respond to the ‑‑ this issue about the numerical split? I mean, is that ‑‑ I think there's California law that says you're not supposed to do that, too, is there not? It's discouraged, but it's not prohibited is my understanding. And there is no United States Supreme Court precedent that prohibits it. Well, that's not totally true. We have Brasfield and so on that talk about under the supervisory power. Right, no constitutional ‑‑ Federal courts are not supposed to do that. Yes, and there is, to my knowledge, no constitutional decision by the United States Supreme Court saying that that is a constitutional violation. Now, could the court get there? Yes, sometime it could. Can it get there in an AEDPA case? I think the answer to that is no. Opposing counsel says that Panetti says that general rules can be applied in a bad way. There's no question about that. But on the other side, and more recently, in 2013, just a couple of weeks ago in Nevada v. Jackson, the Supreme Court said quite clearly that you can't take general principles like the right to present a defense and from that craft a rule and impose that rule on the states. And that ‑‑ the reference to Panetti here is suggesting that that's what this court should do, and that's incorrect. Well, that was the case that I was referring to with Mr. Dombrowski where I was asking about, you know, aren't you just asking us to do what we keep getting reversed on? Yes, and just earlier this year in Marshall v. Rogers, they did the same thing with regard to reinstatement of counsel after someone has exercised for right of rights. You can't take circuit rules or general rules or supervisory rules and from those craft an obligation on a state to follow some constitutional rule that has not yet been clearly announced by the United States Supreme Court. The ‑‑ one of the things that is troubling in this case is sort of figuring out what the claim is. Opposing counsel says that Mr. or Ms. DeMola referred to a number of claims or referred to a number of federal principles by short citations at the end of her briefing. It is, I think, important to look at the way those claims were presented to the California Court of Appeal. Ms. DeMola's argument was largely that the trial court, as counsel just argued, erred in a prejudicial way when it didn't immediately grant a mistrial, and that was the heart of their argument. The second and subsidiary issue was that the trial court's Allen charge, or in this case the Moore charge following a California Supreme Court case, was wrong, and that was rejected by the Court of Appeal. Finally, there was a fleeting reference to improper dismissal of a juror, but that interestingly, and this is at excerpts of record 721, note 85, essentially the argument there was that juror number 7 was not shown to have engaged in misconduct, not that the trial court was wrong in removing her, simply that they got the facts wrong, not that they made a mistake in law. If the trial court had removed her before the first time, would this be a different case? Yes, and the trial judge said exactly that. He said quite clearly to the prosecutor on at least two separate occasions, you're asking me to discharge this juror for failing to deliberate. I am not going to do that. The trial judge cited Cleveland and said I will be overruled. The law in California will not permit me to remove her at this point. And only after carefully protecting her rights, in his discussions with juror number 7, he said I'm not trying to pressure you, reminded her regularly, only after she clearly violated his earlier instruction not to. If you wait long enough with anyone, you can probably make them do something wrong. Well, yes. She got very busy. Well, I'm convinced that jurors probably do wrong things all the time that we don't know about, and if you wait long enough, you're going to find one. I won't dispute that. That's why we – I think that's part of the reason why the courts, our judicial system of courts, break privacy to the deliberations of jurors. The black box theory. Exactly. We really don't want to know what goes on inside the box. That's right. On a decision. This case was not argued as – or it was not presented in the state court as an improper exercise of 1089, which the California Supreme Court in Cleveland says incorporates federal law. It was instead argued largely, as was just argued, that the trial court had to grant the mistrial as soon as one juror said, we are hung. And that's not the law anywhere. The court said, go home and think about it some more. After that, what happened was that there were a number of indications that juror number seven was engaged in this conduct, either refusing to apply the law or – and this was from the very beginning, from the first mention of the alleged – or the possible misconduct by juror number five in having seen the ex terra and mentioned it in deliberations. Right at that time, I think that was on April 12th, juror number 12 said, it looks to us – it looks to me like juror number seven is bringing in her professional opinion. So the trial court was sensitive to that misconduct and didn't rule on misconduct until it became absolutely clear four days later. In the meantime, the jurors did deliberate. The – the court of appeal should not have been – should – and should not now be criticized for not parsing each case in a string cite by Bell and DeMola. They are permitted to, in accordance with Johnson v. Williams, get to the heart of the matter. And the heart of the matter in this case was, was the trial – did the trial court err, as Ms. DeMola said, and Mr. Bell said, in not granting a mistrial immediately? Did the trial court err in giving the dynamite charge, which Ms. Bell – which Ms. DeMola argued? And did the trial court err under 1089 in dismissing a juror for misconduct? Those were the arguments made in the opening brief. Never did any counsel, either in a petition for rehearing or in the petition for review, say that the court of appeal missed a constitutional error that matters to me, failed to address it. That also is addressed in Johnson v. Williams. The state court got to the heart of the matter and decided it. That decision is entitled to deference. This case should be remanded. Thank you. Thank you very much. The cases just argued are submitted.
judges: Tallman, Clifton, Callahan